Opinion delivered June 9, 1888.

———

No. 6121.

JOHN WELCH *v.* THE STATE.

CONVEYING ARMS INTO JAIL TO AID THE ESCAPE OF PRISONERS—TERM DEFINED—CHARGE OF THE COURT.—A JAIL, as defined by article 226 of the Penal Code, is any place of confinement used for detaining a prisoner. This definition will include the space between the jail house proper and the wall surrounding it, if the wall is used as a means for the safe keeping of the prisoners; and whether or not such wall is a part of the jail, is a question to be determined by the jury under proper instruction of the court.

APPEAL from the County Court of Edwards. Tried below before the Hon. Winchester Kelso.

The appellant in this case was convicted under an indictment which charged him with conveying into the jail of Edwards county four certain saws and a gun, with intent to aid in the escape of one R. Welch, a prisoner then confined in said jail. The penalty assessed was a term of two years in the penitentiary.

W. J. Sansom, sheriff of Edwards county, was the first witness for the State.   He testified that he arrested one Robert Welch on November 17, 1887, for horse theft, and placed him in the Edwards county jail, in which jail the said Robert Welch has since been continuously confined.   The witness then produced the capias and the indictment under which the arrest of the said Robert Welch was made.   The witness, who had sole charge of the said jail, had no regular jailer until within the last four weeks.   Prior to the employment of the present jailer, the witness or some one of his deputy sheriffs kept the jail.   The jail of Edwards county consists of two iron cages, placed in a plain one story box house, which is constructed of pine lumber about one inch thick, the planks standing perpendicular.   The said house consists of the one room in which the cages are situated.   The cages stand about four feet from the walls of the house.   The cages are made of iron and steel, and there are openings between the bars large enough for a man to run his hand through, and an opening at the bottom of the cage doors about four by ten inches in size, through which provisions and water are passed to the prisoners.   The house has a roof and floor.   The wall of the house is but one plank thick and has six windows and a door.   The windows are of the common glass kind, without blinds or shutters, and at their lowest points about three feet from the ground on the outside.   The glass is badly broken in all of the windows, and the entire sash is gone from one of them.   The house around the cages affords no protection to the jail as a means of preventing access to the cages, as a person could easily step through the sashless window and reach the cages.   But surrounding the house and the cages, at a distance of ten feet from the house on either side, is erected a high wall or fence.   That wall or fence is built of cedar timber eight or nine inches in diameter at the butt.   The said wall is built like a picket fence, the timbers standing on end, the flat or hewn side out.   This wall is about eight feet high, the timbers standing close together.   The pickets are sawed off smooth and even at the top, and are surmounted by a plank running all the way round.   Another plank, with

spikes two or three inches long, pointing upwards, is nailed to the first plank all around the fence or wall. That fence has a heavy door to it, which is kept locked at all times. That wall or fence was built around the house and cage as a protection for the jail and the safe keeping of prisoners, about six months ago, and affords more protection than either the house or the cages. The Edwards county jail is situated in the town of Leakey, which is the site of said county.

Deputy Sheriff Dan Cryer, the next witness for the State, testified that, expecting an attempt to rescue the prisoners confined in the Edwards county jail, on the night of April 7, 1888, he placed deputies Bargeley, Dugat, Miller and Fleischer in and about the jail to guard it, and went himself up the river to intercept, if possible, the parties he expected to attempt the rescue. About one o'clock that night, he was informed of the arrest of the defendant, and returned to town, where he found the defendant in custody at the house of the district clerk. He placed defendant in jail and proceeded to search the premises. In a crack on the outside of the picket fence, he found a bottle of nitric acid, which bore the label of an Eagle Pass druggist. On the next morning the deputy sheriffs found four saws in the sink, in the jail yard. The saws, which were made of clock springs, and were from six to eight inches long, were wrapped in an old piece of quilt. The saws were not in the sink when witness left the jail to go up the river, and no persons other than the guards were then in the jail yard.

Herman Fleisher testified, for the State, that he and three other deputy sheriffs were placed on duty to guard the Edwards county jail on the night of April 7, 1888. They made a "round" of the premises about half-past ten o'clock, and then retired to the "house" which surrounded the cages. About an hour later some men came to the jail, and it was not long until one of the men "showed up" inside the fence. One of the deputies challenged that man, but, as he continued to advance, the deputy fired. That shot was answered by one from beyond the wall, when the man who had got inside the wall exclaimed that he was shot, and asked that the shooting be stopped. Defendant was then found prostrate on the ground in the space between the wall and the "house," his gun lying on the ground near him. He explained at once that he had scaled the wall only for the purpose of handing his son, Robert Welch, then confined in jail, two dollars in money. Witness then examined the outer

wall fence, and found a blanket thrown over the spikes, at a point in the rear of the house, and indications that the fence had been scaled at that point. A bottle containing a liquid of some kind, labeled "nitric acid, Cooper, druggist, Eagle Pass," was afterwards found in a crack on the outside of the fence. That bottle could be readily reached from the inside of the jail yard, but not from the cages or house. On the next morning, some clock spring saws were found in the sink in the jail yard. Defendant, when shot, and when he fell, was inside of the space between the fence and the house, and about six feet from the house.

The defense introduced no testimony.

No brief for the appellant has reached the Reporters.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for conveying into a jail, instruments and arms with the intent to facilitate the escape of a prisoner lawfully detained in such jail on an accusation of felony. (Penal Code, article 210.) There are but two questions presented: 1. Was the place into which the instruments and arms were conveyed a jail within the meaning of the law? 2. Did the court err in submitting to the jury the determination of the question above stated?

Our code defines a "jail" to be "any place of confinement used for detaining a prisoner." (Penal Code, article 226.) It was a question of fact for the jury to determine from the evidence whether or not the place into which the instruments and arms were conveyed was a place of confinement used for detaining the prisoner named in the indictment. It was not a question of law, and it would have been error if the court had so treated and decided it.

After instructing the jury in the statutory definition of the word "jail" the court further instructed as follows: "If the wall on the outside the frame building which encloses the cages is also a part of the jail, then the conveying the said instruments and arms inside said wall would be a conveying into the jail. It is for the jury to determine from the evidence what constitutes the jail of Edwards county," etc. We hold these instructions to be correct, and we think the evidence fully warrants the finding of the jury that the instruments and arms were conveyed

Statement of the case.

into the jail, that is, into the place of confinement used to detain the prisoner.

A jail is not necessarily a house. It may be a pen, an enclosure of any kind, in fact any place of confinement used for detaining a prisoner. In the case before us the outside wall which surrounded the house in which was the cell occupied by the prisoner was, as shown by the evidence, constructed with a view to confining prisoners securely, and constituted in fact a stronger and more reliable safeguard against the escape of prisoners than the house or cell. It was the principal protection; the most important portion of the place of confinement.

We find no error in the conviction and it is affirmed.

*Affirmed.*